## Raney v. Commonwealth.

Dec. 8, 1942.

G. D. Milliken, Sr., for appellant.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

On his second trial for murder appellant was convicted of voluntary manslaughter and sentenced to 18 years imprisonment. The first trial resulted in conviction of the same offense and sentence of 21 years imprisonment. That judgment was reversed by this court because we were of the opinion the defendant had not received a fair and impartial trial on account of misconduct of spectators in the courtroom throughout the proceedings. Raney v. Commonwealth, 287 Ky. 492, 153 S. W. (2d) 935.

Appellant was a special police agent appointed in accordance with law by the Governor of Kentucky to serve in the employ of the L. & N. R. Company and was acting in such capacity on the night the homicide took place. The victim of the tragedy was Archie Moore, a college student, who in company of three other young men and two girls, all college students, had been riding from place to place in search of amusement on the evening and night of March 30, 1940. The male members of the party consumed almost two pints of intoxicating liquor while they were together. They departed from a roadhouse on the Nashville road at about midnight and drove to a negro dance hall in Bowling Green for the purpose of watching the negroes "jitterbug." They asked if they would be permitted to stay as spectators and were told that the negroes preferred to have no white spectators that night. Thereupon they left the dance hall and in quest of a similar spectacle stopped in front of a house in the negro section near the underpass of 6th street beneath the L. & N. tracks and near the edge of the railroad's freight yards. One of the boys got out of the car and hearing no music and seeing only one light, concluded no dance was in progress, and according to his testimony was in the act of again getting into

the car when he observed appellant eight or ten feet above the level of the street on the railroad overpass. According to the testimony for the commonwealth, appellant accosted the party, but, instead of remaining to see what he wanted, they drove rapidly away. Appellant thereupon fired two shots and, gaining access to his car which was parked nearby, pursued Moore and his companions, overtaking them several blocks away. He drove his car in front of that driven by Moore, forcing the latter to come to a stop near the curb. He thereupon told the students that they were under arrest for being drunk and for disorderly conduct in attempting to persuade the girls to enter a negro house of ill fame. He directed them to follow him to the police station. The boys denied being guilty of the charges and during the course of the argument the girls called appellant to the car, out of the hearing of their male companions, and explaining their social status, persuaded appellant to permit them to have the boys drive them home. Appellant agreed to this on condition they promise that the boys would take them home immediately. He then started toward his car. None of the boys, who had been placed under arrest, heard the conversation between the girls and the officer. As the officer approached his car, Moore called to him to come back. When he approached the curb, an altercation arose and appellant struck Moore with a black-jack. One of Moore's companions seized appellant from the rear and pinned his arms behind him. Moore disarmed appellant of his blackjack and struck him twice in the face with his fist, then turned and walked away. Moore's companion released appellant, whereupon appellant followed Moore and, from the rear, struck him on the head with a shiney weapon, presumably a pistol or flashlight. Moore turned to face his assailant, and, as he did so, appellant shot him through the stomach, from which wound he died a short time thereafter. These facts were testified to by every witness for the commonwealth which included four bystanders, who out of curiosity gathered close to the scene of the crime. Appellant did not introduce any eyewitness to the fracas except himself and his wife, who was an occupant of his car until the fight started, at which time she attempted to engage on the side of her husband but was withheld by another of Moore's companions. Appellant testified that he was investigating the commission of a crime of breaking into a freight car, when he saw three men run

to an automobile, which was similar in appearance to that occupied by Moore and his party. The car drove out of sight in the direction the Moore car was parked when first sighted by appellant. He stated that he took the occupants of the Moore car for the persons who had committed the crime he was investigating, and accosted them for the purpose of investigating whether they were the guilty parties; that when he threw a light on the group the man standing beside the car was swearing and trying to persuade the girls to enter the negro's house; that when Moore and his friends drove away, he followed them and overtaking them arrested them for disorderly conduct. He testified to the fact that the girls called him to the car and explained that they were college students and that their reputations would be ruined if they were taken to the police station. Whereupon, he agreed to release them upon their promise to have the boys take them home immediately; that he was returning to his car in furtherance of that purpose when he was called back and assaulted by Moore, who took his blackjack from him and beat him almost into insensibility, and that, in defense of his life, he shot and fatally wounded his assailant.

Appellant complains (1) that the court erred in permitting the commonwealth to introduce and read to the jury the transcript of testimony given on the first trial by three witnesses, without the consent and over the objection of the defendant in violation of Amendment 6 of the Constitution of the United States, Section 11 of the Constitution of Kentucky, and Section 4643, Carroll's Kentucky Statutes (now embraced in and compiled as Section 422.150, Kentucky Revised Statutes), and (2) that the court failed to instruct on the whole law of the case. It is unnecessary for us to determine whether the introduction of the evidence objected to violated Amendment 6 of the Constitution of the United States or Section 11 of the Constitution of Kentucky, since it clearly violates the express provisions of Section 4643 of the Statutes which reads:

"The testimony of any witness or witnesses taken by said reporter in any court or division as aforesaid shall constitute a part of the record of the case, and may, in the discretion of the presiding judge, be used in any subsequent trial of the same case between the same parties, where the testimony of

such witness or witnesses can not be procured, which fact must be made to appear satisfactorily to the court by the affidavit of the party desiring to use the same, or his attorney: Provided, That in criminal cases such testimony shall be so used only upon the consent of the defendant.''

The Assistant Attorney General in a very ingenious and elaborate argument attempts to evade the inhibitions of the Statute in criminal cases, but the language employed in the act is so plain and unambiguous as to admit of no construction other than that the defendant must agree to the reading of the transcript of former testimony of witnesses who are living and competent to testify, before such transcript may be placed in evidence against him. We must look to the character of the incompetent testimony in its relation to all the evidence to determine whether the error complained of adversely affected the substantial rights of appellant. We have no hesitancy in saying that the testimony given by Dr. Neal was in nowise prejudicial. He merely described the location of the wound and the direction of the bullet through the body of deceased. The same testimony was given by the nurse in attendance at the time the doctor made the examination. The testimony threw no light whatever upon whether appellant shot in self-defense or pursuant to an aggression on his part. The admission of the testimony of the other two witnesses presents a more serious question. Both of the absent witnesses were eyewitnesses to the tragedy. One of them was a companion of Moore and the other was totally disinterested. Although the other eyewitnesses, except appellant and his wife, testified to the same facts introduced by the testimony of the absent witnesses, their testimony was in direct conflict with that introduced by appellant and concerned the crucial events from the relation of which the jury necessarily must have determined its verdict. Since the incompetent evidence was of such a substantial nature, we are not in position to say that the jury would have arrived at the same verdict had the evidence been rejected. For this reason the judgment must be reversed.

Since another trial must be had, we will consider the complaint that the court did not present the whole law of the case in his instructions to the jury. It is argued that the failure of the court to define the words ''public offense'' in instruction No. 5 was prejudicial

error.  Instruction No. 5 reads:

> "The court further instructs the jury, that under his commission as a railroad policeman, Mr. Raney had authority to make arrests of persons for public offenses committed upon or about railroad property and as such railroad policeman possessed all of the powers of sheriffs and constables throughout the counties in which the said railroad operates and might make arrests of such persons who had committed offenses upon such property in the immediate pursuit thereof or anywhere within said counties in which he was authorized to act provided said offenses were committed upon or about the property of the said railroad company."

In his brief, counsel for appellant has presented an instruction which he conceives should have been given by the court in lieu of instruction No. 5.  It is bottomed upon the theory that appellant had the right to arrest the young men and women and to use such force as was reasonably necessary to effect that purpose, if a felony had been committed in the railroad yards that night, and appellant had reasonable grounds to believe that those he arrested had committed the crime; and that he had the right to arrest persons guilty of disorderly conduct on or near the railroad yards, and to use such force as was reasonably necessary to effect that purpose.  We are of the opinion that the court erred to the prejudice of the commonwealth, not of appellant, in the giving of instruction No. 5, because by his own testimony appellant admitted that at the time of the shooting he had released the prisoners, and was not engaged in making an arrest. That being true, he must rely solely upon the plea of self-defense.  While the court must instruct the jury on every material defense deducible from the evidence, Morgan v. Commonwealth, 242 Ky. 116, 45 S. W. (2d) 850, it is error to instruct on a state of facts which the defendant admits did not exist.  The arrest had been abandoned and appellant either was assaulted by Moore and shot in self-defense, or was himself the aggressor in the affray that ended in the homicide.

The judgment is reversed with directions to grant appellant a new trial and for proceedings consistent with this opinion.

Whole court sitting.